UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| RICKY WILLIAM WINGLE, SR., } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case No.:  2:13-CV-821-RDP |
| } | |
| CAROLYN W. COLVIN, Acting } | |
| Commissioner of Social Security, } | |
| } | |
| Defendant. } | |

## MEMORANDUM OF DECISION

Plaintiff Ricky William Wingle brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his claims for a period of disability and disability insurance benefits ("DIB"). *See also* 42 U.S.C. §§ 405(g).  Based on the court's review of the record and the brief submitted by Defendant, the court finds that the decision of the Commissioner is due to be affirmed.

**I.     Proceedings Below**

Plaintiff filed his application for disability and DIB on May 29, 2009, alleging a disability onset date of April 17, 2009.  (Tr. 14, 188-95).  Plaintiff's claim was denied initially on September 21, 2009 and upon reconsideration on January 5, 2010.  (Tr. 106-09, 111-13). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") and received a video hearing before an ALJ on June 9, 2011.  (Tr. 114, 158).  He was denied disability and DIB on July 26, 2011. (Tr. 14-30).  The ALJ determined that, contrary to his allegations, Plaintiff had not been under a disability as defined in the Act since April 17, 2009, the alleged onset date.  (Tr.

14). After the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 7), that decision became the final decision of the Commissioner and a proper subject of this court's appellate review.

## II.     Facts

Plaintiff was fifty-four years old at the time of his hearing. (Tr. 188). Plaintiff has a GED and past relevant work history as a tractor-trailer operator for the United States Postal Service. (Tr. 237, 241). Plaintiff alleges that he has been disabled since April 17, 2009 due to pain in his left hip, both knees, both shoulders, right elbow, and back. (Tr. 236).

On January 10, 2008, Plaintiff complained to his primary doctor, Dr. Thomas Constantino, of left shoulder pain. (Tr. 443). X-rays revealed mild acromioclavicular (AC) joint arthropathy but an otherwise normal left shoulder. (Tr. 334). Dr. Constantino prescribed Plaintiff pain medication. (Tr. 443). Plaintiff received a corticosteroid injection in his left shoulder on April 9, 2008. (Tr. 399). On April 27, 2008, a MRI scan of his left shoulder revealed small tears, a small cyst, and mild to moderate AC joint arthropathy. (Tr. 333). On July 10, 2008, Plaintiff saw his VA doctor for right leg cellulitis and was off work for one week. (Tr. 388). On September 22, 2008, Plaintiff went to the VA clinic complaining of left hip and back pain. (Tr. 375). He was still working full-time at this time, and the exam results were normal. (Tr. 375-77).

On October 6, 2008, Plaintiff saw a cardiologist at the VA to follow-up on an abnormal stress test he had in April 2008. (Tr. 375, 404-407). Plaintiff told the doctor that he recalled having severe chest pains five years earlier but had not experienced any since; the doctor diagnosed Plaintiff with coronary artery disease based on an old inferior wall myocardial

infarction. (Tr. 373-74). The doctor did not recommend a catheter at that time, due to lack of symptoms. (Tr. 374).

On November 25, 2008, after twisting his knee at work, Plaintiff saw Dr. Constantino because he was experiencing intermittent right knee pain and his knee was locking for about two weeks. (Tr. 414). Plaintiff was wearing a knee brace, but Dr. Constantino indicated that Plaintiffs knee joint was stable. (*Id.*). The diagnosis was medial ligament strain, and Dr. Constantino prescribed pain medication and advised Plaintiff to continue wearing of the brace. (*Id.*). A December 7, 2008 MRI of Plaintiff's right knee showed a medial meniscus tear, mild to moderate cartilage thinning, and mild tendinosis of the quadriceps tendon and patellar tendon. (Tr. 331). On December 31, 2008, Plaintiff saw a VA orthopedist who reviewed the December 7th MRI and indicated it showed a medial meniscal tear. (Tr. 366-67). Plaintiff received a steroid injection in his right knee on January 12, 2009. (Tr. 365). On March 2, 2009, Plaintiff told his VA orthopedist that the injection gave him two to three weeks of relief, and he would rather be treated with pain medication instead of arthroscopic surgery. (Tr. 364).

On April 7, 2009, Plaintiff again saw his VA doctor with complaints of pain (Tr. 360-61), and on April 18, 2009, Plaintiff went to the VA emergency room with complaints of lower back pain and pain in his left hip, knee, and ankle. (Tr. 354-57). Plaintiff stated that he had been experiencing the pain for over one week after loading and unloading his truck and lifting weights up to ninety pounds. (*Id.*). Plaintiff's gait, station, range of motion, stability, muscle strength, and tone of upper and lower extremities were normal, and the doctor diagnosed Plaintiff with acute back pain. (Tr. 356). On April 20, 2009, Plaintiff saw Dr. Constantino with complaints of right knee pain, low back pain, and hip pain since he hit a car while backing up his truck for the post office. (Tr. 413). Dr. Constantino found that Plaintiff had decreased range of motion of the

left hip and lumbar spine and diagnosed hip pain due to possible hamstring strain or osteoarthritis. (*Id.*). X-rays the same day found mild disc degeneration at the L1-2 level and normal left hip study. (Tr. 329).

On April 30, 2009, Dr. Constantino noted that Plaintiff was scheduled to return to work May 4, 2009 and stated that the previous restrictions still applied; however, these restrictions were not specified in the records. (Tr. 413). Dr. Constantino diagnosed Plaintiff with lumbar degenerative disc disease and tendonitis of the left hip. (*Id.*). On May 18, 2009, Dr. Constantino noted that Plaintiff could operate a commercial motor vehicle, but he could not lift, push, or pull over twenty-five pounds. (Tr. 412). Dr. Constantino noted that this restriction was from April 30, 2009 and forward. (*Id.*). Dr. Constantino continued those same restrictions and pain medication in Plaintiff's June 2, 16, and 30, 2009 visits. (Tr. 447-48).

On June 8, 2009, Plaintiff went to the VA for complaints of lower back, left hip, left knee, and left ankle pain. (Tr. 517). The doctor reviewed Plaintiff's x-rays and stated that they showed mild arthritis. (Tr. 519). Plaintiff met with a rheumatology consultant on June 30, 2009, and the diagnosis was arthralgia and back pain with mild scoliosis. (Tr. 514-16).

In a June 2, 2009 Disability Report, Plaintiff stated that he was limited in his ability to work due to his left hip, both knees, both shoulders, right elbow, and back problems. (Tr. 236). Plaintiff also stated that he could not lift, push, or pull more than twenty-five pounds, and the medications he took prevented him from hearing his alarm clock in the morning. (*Id.*). Plaintiff stated that he was in constant pain. (*Id.*).

Plaintiff completed a Function Report on June 28, 2009 and stated that he lives alone, and during the day, he watches television, uses the Internet, takes his pain medication, and visits family and friends when able. (Tr. 261). Plaintiff stated that he has a dog that he feeds and

waters and neighbors help him walk. (Tr. 262). Plaintiff noted some problems with personal care but stated that he prepares meals daily and does household chores. (*Id*.). Plaintiff also indicated that he could lift about twenty pounds, but he could not sit without pain in his back and left hip and could walk only two blocks before needing to stop and rest. (Tr. 266). Plaintiff also noted that he used a knee brace as needed and that he had respiratory problems. (Tr. 267-68). Plaintiff's medical records indicate that he has smoked cigarettes for over forty years, despite being encouraged to quit. (Tr. 346-47).

Plaintiff stated in an August 2009 Pain Questionnaire that his pain began after he was hit by a car while helping a disabled motorist in 1990, but the pain has increased since then. (Tr. 269). Plaintiff noted breathing problems and stated that his pain medicine does not relieve his pain but makes him sleepy. (Tr. 271, 273).

On July 13, 2009, Plaintiff told Dr. Constantino that he was feeling better but was not allowed to return to work. (Tr. 448). On August 1, 2009, Plaintiff was seen for an exam at the VA clinic in Kentucky after moving there from Michigan. (Tr. 469-80). The exam results were normal, the doctor discontinued Plaintiff's pain medications, and Plaintiff was advised to engage in thirty minutes of daily activity, such as walking. (*Id*.).

On September 8, 2009, Dr. Omar Chavez conducted a consultative examination of Plaintiff. (Tr. 419-24). Plaintiff reported that his back pain was a 7/10, and he had pain in the left ankle, left hip, and both knees with an intensity of 3 to 8/10; however, Plaintiff reported that pain medication alleviated the pain. (Tr. 419). Dr. Chavez noted that Plaintiff could dress and undress, get up from the chair, get on to the exam table, and squat. (Tr. 421). Dr. Chavez also noted that Plaintiff had decreased range of motion in both shoulders, lumbar spine, and straight

leg raising from supine. (*Id.*). Dr. Chavez diagnosed Plaintiff with chronic back pain and chronic pain in the knees, left ankle, and left hip. (*Id.*).

Plaintiff went to the VA emergency room on November 6, 2009 for complaints of right leg cellulitis. (Tr. 513-14). In a November 19, 2009 disability report, Plaintiff stated that his pain had increased, he continued to experience episodes of cellulitis, and walking had become harder for him. (Tr. 247). Plaintiff also stated that he had respiratory problems, his pain made it hard for him to care for his personal needs, and he tried to stay off of his feet as much as possible. (Tr. 247, 250).

On July 23, 2010, Plaintiff went to the VA emergency room in Tennessee with complaints of right knee, left hip, and lower back pain after using a push mower. (Tr. 577). On August 16, 2010, Plaintiff underwent a primary exam at the Tennessee VA. (Tr. 565-70). The examining doctor found that Plaintiff's muscle strength was 5/5; Plaintiff's extremities were normal except for a popping sound in the left knee; and Plaintiff's straight leg raising test was negative. (Tr. 567). Plaintiff was able to heel/toe walk, his gait was steady, and he could squat with right foot difficulty. (*Id.*). X-rays showed near total lumbarization of S1 and the diagnosis was minimal degenerative disc narrowing at L5-S1. (Tr. 600).

On January 31, 2011, Plaintiff was examined by an orthopedist at the VA. (Tr. 649-51). The orthopedist noted that Plaintiff was able to undress and get up and down out of the chair and onto the examining table without difficulty. (Tr. 650). Moreover, the orthopedist found no irritability or restriction of motion of either hip and no effusion or increased warmth in either knee. (Tr. 650-51). The orthopedist noted generalized motor wasting in both lower extremities and indicated this was likely due to inactivity. (Tr. 651), and that a January 4, 2011 x-ray of Plaintiff's left hip (Tr. 640) and bilateral knee exams from January 2, 2011 (Tr. 639) were both

normal; however, lumbar spine x-rays from August 16, 2010 demonstrated minimal disc narrowing at L5-S1. (Tr. 651). The orthopedist's diagnoses were pulseless left lower extremity and subjective complaint of low back pain, left hip and bilateral knee pain, without supporting radiographic evidence of degenerative joint disease, and no ligament laxity or joint irritability was identified. (*Id.*). The orthopedist recommended an arterial flow study of the left lower extremity. (Tr. 620). Those tests showed mild obstructive vascular disease at the level of superficial femoral artery. (Tr. 651). Plaintiff was treated for right lower leg cellulitis on April 30, 2011. (Tr. 615-18). On May 16, 2011, Plaintiff complained again of pain in his right shoulder, knees, and left leg and hip and indicated that he sometimes became short of breath when walking uphill. (Tr. 609-10).

At the hearing, Plaintiff testified that he was struck by a vehicle while helping a disabled motorist in 1990. (Tr. 42). However, after the accident, he returned to full duty work at the Postal Service for over twenty years. (*Id.*). Plaintiff also testified that, for about three to five years before his alleged onset date, the Postal Service was accommodating him with restricted or limited duty. (*Id.*). Plaintiff testified that the post office informed him that his schedule was changed, and after lifting heavy containers for five days, Plaintiff went to the VA emergency room on April 18, 2009 for pain. (Tr. 43-44). Plaintiff testified that he was off work for a few weeks, and when he returned, he was told that there was no longer any work available for him. (Tr. 44). Plaintiff testified that his back and hip prevented him from sitting at a desk and dispatching trucks. (Tr. 45). Plaintiff also testified that his condition has gotten worse since May 2009, when he was restricted from lifting, pushing, or pulling more than twenty-five pounds. (Tr. 47).

**III.     ALJ Decision**

Disability under the Act is determined under a five-step test.  20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. § 404.1572(a).  "Gainful work activity" is work that is done for pay or profit.  20 C.F.R. § 404.1572(b).  If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability.  20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii).  Absent such impairment, the claimant may not claim disability.  *Id.*  Third, the ALJ must determine whether the claimant's impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled.  20 C.F.R.  § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.  The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments.  20 C.F.R. § 404.1520(e).  In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled.  *Id.*  If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step.  20 C.F.R. § 404.1520(a)(4)(v).  In the last part of the analysis, the ALJ must determine whether the claimant

is able to perform any other work commensurate with his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

Here, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset date and that he has the following severe impairments: mild degenerative disc narrowing at L5-S1, right knee meniscal tear, left shoulder mild acromioclavicular (AC) joint arthropathy, and mild chronic obstructive pulmonary disease (COPD). (Tr. 16). The ALJ then found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (Tr. 19). The ALJ concluded that Plaintiff "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)[1] except he cannot lift, push or pull weight over 25 pounds." (*Id.*).

During Plaintiff's hearing, the ALJ asked a vocational expert ("VE") if a person with Plaintiff's designated RFC would be precluded from performing Plaintiff's past relevant work; the VE answered in the affirmative. (Tr. 53). Therefore, the ALJ determined that Plaintiff is unable to perform his past relevant work. (Tr. 28).

Next the ALJ asked the VE whether jobs exist in the national economy that could be performed by an individual of Plaintiff's age, and with Plaintiff's education, work experience, and RFC. (Tr. 29, 52-53). The VE responded that such an individual would be able to perform light, unskilled jobs such as gate guard, ticket taker, and production inspector. (Tr. 53). The

---

[1] Light work involves lifting no more than twenty pounds at a time and frequent lifting or carrying up to ten pounds. Jobs in this category require a good deal of walking or standing or sitting while pushing and pulling arm or leg controls. *See* 20 C.F.R. § 404.1567(b).

9

ALJ then asked the VE if the following hypothetical individual would be capable of performing Plaintiff's past relevant work or any other work:

> [A]n individual of [Plaintiff's] age, education, past work experience, etc., is restricted to lifting and carrying only 20 pounds occasionally and 10 pounds frequently, can't climb ladders, ropes or scaffolds, but can occasionally climb ramps and stairs, and can occasionally stoop, kneel, crouch, crawl and balance, and he can't perform overhead lifting [from] the shoulders up bilaterally, and he should avoid extremes of cold and vibration with no work around hazardous machinery . . . .

(Tr. 29). The VE responded that such an individual would not be able to perform Plaintiff's past relevant work but could still do the light, unskilled jobs of gate guard, ticket taker, and production inspector. (Tr. 54-55). As the ALJ noted, "the [VE] further testified that even if such individual required the ability to sit or stand at the workplace every 30 minutes, these jobs would not be precluded, but only reduced in numbers by approximately 50%." (*Id*.). In light of the ALJ's findings and the testimony of the VE, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from April 17, 2009 through the date of the ALJ's decision. (Tr. 29).

## IV.    Plaintiff's Argument for Reversal

Plaintiff has not filed a brief in opposition of the Commissioner's decision. There is no argument challenging the ALJ's decision other than the allegation in Plaintiff's complaint that the ALJ's decision is not supported by substantial evidence. (Doc. #2). Thus, the court considers all arguments on issues of fact waived. *See United States v. Cunningham*, 161 F.3d 1343, 1344 (11th Cir. 1998) ("Because Cunningham has offered no argument on this issue on appeal, we find that he has abandoned it.").

### V.     Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See Id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### VI.    Discussion

#### A.     The ALJ Correctly Followed the Five-Step Test for Determining Disability.

After reviewing the ALJ's decision, the court finds that the ALJ properly applied the five-step test for determining whether Plaintiff is disabled. First, the ALJ concluded that

Plaintiff has not engaged in substantial gainful activity during the relevant period. (Tr. 16). Second, the ALJ determined that Plaintiff has the following severe impairments: mild degenerative disc narrowing at L5-S1, right knee meniscal tear, left shoulder mild AC joint arthropathy, and mild COPD. (*Id.*). The ALJ then determined that Plaintiff did not have an impairment or combination of impairments that met relevant Listing requirements. (Tr. 19). In light of these findings, the ALJ made an RFC determination and concluded that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b); however, the ALJ determined that Plaintiff cannot lift, push, or pull weight in excess of twenty-five pounds. (*Id.*). After determining Plaintiff's RFC and limitations, the ALJ found that Plaintiff cannot perform any of his past relevant work; however, based on responses to hypothetical questions posed to the VE, the ALJ determined that an individual with Plaintiff's age, education, work experience, and RFC could perform jobs that exist in significant numbers in the national economy, such as gate guard, ticket taker, and production inspector. (Tr. 28-29). The ALJ followed the proper legal standards. *See* 20 C.F.R. §§ 404.1520(a), 416.920(b)

      **B.**    **The ALJ's Disability Determination is Supported by Substantial Evidence.**

After careful review of the record, the court also finds that the ALJ's decision is supported by substantial evidence. The medical record supports the ALJ's list of severe impairments. (Tr. 16). Furthermore, substantial evidence supports the ALJ's finding that Plaintiff has no severe impairment due to episodes of right lower extremity cellulitis and that he has no severe cardiac impairment. Plaintiff only experienced three episodes of cellulitis from July 2008 to April 2011. (Tr. 388, 513-14, 615-18). The first time Plaintiff mentioned cellulitis was noted in his November 19, 2009 Disability Report; (Tr. 247) however, Plaintiff did not allege disability due to cellulitis in his June 2009 Disability Report (Tr. 236) or in his June 2009

Function Report. (Tr. 261-69). Nor did he allege pain due to cellulitis in his August 2009 Pain Questionnaire. (Tr. 269-73). Moreover, Plaintiff saw a cardiologist at the VA on one occasion and told the doctor that he had experienced chest pains five years before but had not experienced any pain since. (Tr. 373-74). Plaintiff did not allege disability due to cardiac impairment in his June 2009 Disability Report, (Tr. 235-42) June 2009 Function Report, (Tr. 261-29) or November 2009 Disability Report. (Tr. 246-52). Therefore, substantial evidence supports the ALJ's finding of severe impairments and the ALJ's determination that Plaintiff does not have an impairment or combination of impairments that meets the criteria of the Listings. (Tr. 19).

Furthermore, the court finds that substantial evidence supports the ALJ's RFC determination. The ALJ's determination is consistent with the restriction Dr. Constantino placed on Plaintiff (Tr. 412), as well as the results of Plaintiff's doctor exams, x-rays, and MRIs. (Tr. 329, 331, 333-34, 356, 366-67, 375-77, 413-14, 419-24, 469-80, 514-16, 519, 567, 600, 639-40, 649-51).

Substantial evidence also supports the ALJ's determination that Plaintiff's hearing testimony regarding pain was not credible. The Eleventh Circuit follows a two-prong pain standard, which requires that:

> In order to establish a disability based on testimony of pain and other symptoms, a claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). After an ALJ determines that an objectively determined medical condition can reasonably be expected to cause the pain, an ALJ may reject the subjective pain testimony as less than credible if the ALJ can show inconsistencies between the claimant's

testimony and his daily activities, medical records, doctor's notes, or any other relevant evidence.  *See* 20 C.F.R. § 416.929(c)(3).

The ALJ properly recited the pain test (Tr.19) and found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent that they were inconsistent with the RFC assessment. (Tr. 20).  Plaintiff's testimony was also inconsistent with his reported daily activities (Tr. 262) as well as his statements that he could lift twenty to twenty-five pounds.  (Tr. 236, 266).   Moreover, as the ALJ noted, "[Plaintiff's statements were] also inconsistent with the objective, clinical findings. [Plaintiff's] imaging and exam findings have been minimal and no doctor assessed he is disabled due to those findings."  (Tr. 27).

Finally, the ALJ's determination that there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform is supported by the hearing testimony of the vocational expert.  (Tr. 28, 52-56).

### VII.  Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence, and the proper legal standards were applied in reaching this determination.  The Commissioner's final decision is therefore due to be affirmed.  A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this August 2, 2016.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE